SUNSET FINANCIAL RESOURCES, INC., Plaintiff,

v.

REDEVELOPMENT GROUP V, LLC et al., Defendants.

Civil Action Nos. 05–2914, 05–2915.

United States District Court, D. New Jersey.

Feb. 24, 2006.

Alison L. Galer, Norris, McLaughlin & Marcus, P.C., Somervile, NJ, and Jaimee Katz Sussner, Herrick, Feinstein LLP, Newark, NJ, for Plaintiff.

Thomas A. Cunniff, Samuel H. Isreal, James Griffith, Fox Rothschild LLP, Lawrenceville, NJ, for Defendants Redevelopment Group V, LLC and Dawn Staley.

Stephen J. Defeo, Brown & Connery, LLP, Westmont, NJ, for Third-party Defendants Sunset Commercial Group, LLC, Sunset Mortgage Company, L.P. and Steven Forman.

Gregory C. Dicarlo, Cipriani & Werner, P.C., Marlton, NJ, for Third-party Defendants Flynn Appraisal Associates, Inc. and Brian Flynn.

## *OPINION*

SIMANDLE, District Judge.

### *TABLE OF CONTENTS*

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 636
 A. *Origins of the Alleged Scheme to Defraud Defendants* . . . . . . . . . . . . . . . . . . . . 636
 B. *Representations Regarding the Status of the Coliseum* . . . . . . . . . . . . . . . . . . 637
 C. *The Role of Flynn Appraisal Associates, Inc. and Brian Flynn* . . . . . . . . . . . . 637
 D. *The Events of August 4, 2004—The Purported Closing Date* . . . . . . . . . . . . . . 638

II. PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 639

III. PLAINTIFF'S MOTION AND DEFENDANTS' CROSS–MOTION FOR
 LEAVE TO AMEND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 640

 A. *Legal Standard for Motions for Leave to Amend* .......................... 640
 B. *Application to Plaintiff's Motion for Leave to Amend and*
 *Defendants' Cross–Motion to Amend* ................................ 640
 1. Plaintiff's Motion for Leave to Amend ............................. 640
 2. Defendants' Cross–Motion to Amend ............................... 641

IV. THIRD–PARTY DEFENDANTS' MOTIONS TO DISMISS .................... 641
 A. *Legal Standard for a Motion to Dismiss* ................................ 642
 B. *Defendants' Fraud-based Claims* ........................................ 643
 1. Pleading Standards Under Fed.R.Civ.P. 9(b) ........................ 643
 2. Whether Defendants' Allegations of Fraud are Properly Pled ........ 644
 3. Whether Defendants have Sufficiently Plead Fraud Allegations
 Made "Upon Information and Belief" ............................. 645
 C. *Defendants' Negligence-based Claims* .................................... 647
 1. Arguments Made by Both the Sunset and Flynn Defendants .......... 647
 2. Additional Arguments Made by the Flynn Defendants ............... 648
 3. The Court's Analysis ............................................. 648
 D. *Defendants' Claim of Conversion* ....................................... 649
 E. *Defendants' Claim of Breach of the Covenant of Good Faith and Fair*
 *Dealing* ................................................................ 650

V. CONCLUSION ................................................................ 651

On the surface, the matter presently before the court appears quite straightforward: A mortgage lender (Plaintiff, Sunset Financial Resources, Inc.) files suit to foreclose on a mortgaged property and sues the borrower (Defendant Dawn Staley and her investment vehicle, Redevelopment Group V, LLC) on the underlying note. However, scratching the surface reveals that this matter is much more complex, involving claims by the borrower of fraud, negligence, conversion, conspiracy, forgery and other acts of numerous individuals and entities (including a mortgage broker, an appraiser, a title company and a law firm, among others) who allegedly worked in concert to fraudulently induce Staley to purchase an outdated and dilapidated sports facility and sign a personal guaranty before eventually converting a portion of the funds she provided for use as a down payment on the facility.

Currently before the Court are the following four motions: (1) Plaintiff Sunset Financial Resources Inc.'s motion for leave to amend its original Complaint; (2) Defendants Redevelopment Group V, LLC and Dawn Staley's cross-motion to amend its Answer and Third-party Complaint; (3) Third-party defendant Flynn Appraisal Associates Inc.'s motion to dismiss Defendants' Third-party Complaint; and (4)Third-party defendants Sunset Mortgage Company, L.P. and Sunset Commercial Group, LLC's motion to dismiss Defendants' Third-party Complaint. The Court has considered, in their entirety, the voluminous written submissions of all parties and heard oral argument on the four motions on February 15, 2006.

The simpler of the four motions are Plaintiff's motion for leave to amend and Defendants' cross-motion to amend which, because Plaintiff and Defendants have the right to amend their pleadings once as a matter of course under Fed.R.Civ.P. 15(a), will be granted and Plaintiff will be permitted to file its proposed first amended complaint (the "FAC") and Defendants will be permitted to file its proposed first amended answer, cross-claims and counterclaims (the "FAA"). The granting of Plaintiff's motion and Defendants' cross-motion, however, does not moot either third-party defendants Flynn Appraisal Associates Inc.'s or Sunset Mortgage Com-

pany, LP/Sunset Commercial Group, LLC's respective motions to dismiss. Because the Court finds unpersuasive the arguments made by third-party defendants in their respective motions to dismiss— namely that Defendants have failed to properly plead their fraud and negligence-related claims and that, even if properly pled, these claims do not state a cause of action upon which relief can be granted— the Court will deny both third-party defendants' motions to dismiss. The Court will explain these findings herein.

## I. BACKGROUND[1]

This case centers on an athletic facility known as "The Coliseum" in Voorhees, New Jersey (the "Coliseum"). The property is a 22–acre commercial sports facility, containing an ice rink, gym, indoor and outdoor swimming pool, fitness center, banquet facility and office space. (FAC ¶ 7.)

### A. *Origins of the Alleged Scheme to Defraud Defendants*

According to Defendants,[2] an individual named Jay Phillips ("Phillips"), who at one time owned the Coliseum but lost it in a foreclosure action, devised a scheme to recover the property. (FAA ¶ 25–26.) In furtherance of his scheme, Phillips approached Dawn Staley[3] ("Staley") and requested that she help him re-acquire the Coliseum by providing $200,000 for a down payment. (*Id.* ¶ 27.) According to Defendants, Phillips represented that he would obtain a mortgage from Sunset Commercial Group, LLC ("Sunset Commercial") and/or Sunset Mortgage Company, LP ("Sunset Mortgage")[4] for the remainder of the purchase price. (*Id.* ¶ 27, 29.) It was agreed that the parties would form Redevelopment Group V, LLC, a Pennsylvania limited liability company—with Staley as the sole member—to serve as the legal entity by which the parties would acquire the Coliseum. (*Id.* ¶ 32.) Phillips allegedly told Staley that, because the Coliseum would be owned by Redevelopment Group V, LLC ("Redevelopment") and operated by Phillips through his limited liability company (Redevelopment Group V Property Management, LLC), Staley would not have any personal or financial responsibility for the project. (*Id.* ¶ 30.) Staley even-

---

1. All the facts are taken from either Plaintiff's proposed FAC or Defendants' proposed FAA and will be deemed true for the purposes of the pending motions to dismiss. *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 962 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990); *see also Dana Transp., Inc. v. Ableco Finance, LLC*, 2005 WL 2000152, *1, 2005 U.S. Dist. LEXIS 18086, *1 (D.N.J. August 17, 2005.)

2. Plaintiff filed companion lawsuits. One suit is a foreclosure action (Docket No. 05–2914) and the other is an action to enforce a mortgage note (Docket No. 05–2915). For convenience, Defendants Redevelopment Group V, LLC and Dawn Staley will be referred to collectively as "Defendants" despite the fact that, while Redevelopment and Staley are both defendants in the note action, only Redevelopment is a defendant in the foreclosure action.

3. Defendant Staley is the sole member of the Defendant, Redevelopment Group V, LLC. (FAA ¶ 1.) Staley is also a former professional basketball player and member of the United States Olympic Women's Basketball team. (Id. at ¶ 23.) When Staley was younger, Phillips served as one of Staley's mentors. (*Id.* at ¶ 24.)

4. Sunset Commercial, Sunset Mortgage, and Steven Forman (managing member of Sunset Commercial) collectively will be referred to as the "Sunset Defendants." Moreover, although they share the word "Sunset" in their names, neither third-party defendants Sunset Commercial or Sunset Mortgage is related to Plaintiff, Sunset Financial Resources, Inc. (*See* Sunset Defendants Motion to Dismiss Br. at 1, n. 1.)

tually contributed $130,000 to the down payment. (*Id.* ¶ 31.) Phillips told Staley that he would pay the $70,000 difference. (*Id.*)

According to Defendants, Phillips worked in concert with Steven Forman ("Forman") and Andrew Benish (an employee of Greentree Mortgage Company) to consummate the deal in which Redevelopment would purchase the Coliseum. (*Id.* ¶ 27 and 33.) As the closing approached, Defendants allege that Phillips and Forman induced Staley to sign a personal guaranty for what Phillips and Forman called a short-term "bridge mortgage." (*Id.* ¶ 67.) Specifically, Phillip and Forman told Staley that, under the bridge mortgage, she would sign a personal guaranty but the guaranty would only cover the 90–day bridge loan. (*Id.* ¶ 35.) Staley need only personally guaranty the short-term bridge loan, according to Phillip and Forman, because the two had arranged long-term financing from Greentree Mortgage Company that would replace (or "take out") the bridge loan she guaranteed. (*Id.* ¶ 35–37.)

### B. *Representations Regarding the Status of the Coliseum*

In addition to alleged misrepresentations Phillips and Forman made to Staley regarding the financing aspect of the transaction, Phillips and Forman allegedly told Staley that the Coliseum was worth at least $9,000,000. (*Id.* ¶ 57.) Phillips and Forman allegedly told Staley that she was financially protected in the transaction because (1) she would be taking out a $4,700,000 mortgage on a property that was actually worth $9,000,000, and (2) the monthly income stream from the property's current lessees was greater than the monthly mortgage payments. (*Id.*) In or-

der to justify the Coliseum's value and representations made to Staley regarding the rental income stream, Defendants allege that Phillips, Forman, and Benish created a number of fake leases. (*Id.* ¶ 38, 42–45.) One such "lease" involved the Philadelphia Phillies ("Phillies"). (*Id.* ¶ 38–39.) Defendants allege that Phillies' employee, Rob Holiday ("Holiday") was brought into the scheme in order to (i) create bogus letters (on Phillies' letterhead) stating that the Phillies had committed to lease space at the Coliseum and (ii) personally represent the same to Staley. (*Id.* ¶ 38–41.)

Next, Phillips, Forman, and Benish allegedly prepared a fake loan application to Plaintiff that was in Staley's name (although Staley insists that she never saw the application and the contact information on the application listed Benish's email address rather than any of Staley's contact information.) (*Id.* ¶ 48–49.) Incorporated into the loan application were a number of the bogus leases and a letter from Benish and Greentree Mortgage Company stating that Greentree would replace the loan with a long-term loan in the near future. (*Id.* ¶ 50.) Forman then sent Staley a letter of intent that stated that (i) Sunset Commercial and Sunset Financial would loan her $4,700,000 for the purchase of the Coliseum, (ii) that the loan was specifically to provide bridge financing, and (iii) that the "loan-to-value" ratio of the transaction will be no more than 65%. (*Id.* ¶ 52.)

### C. *The Role of Flynn Appraisal Associates, Inc. and Brian Flynn* [5]

In connection with the transaction, Phillips, Forman, and Benish allegedly induced Plaintiff to engage Flynn Appraisal Associates, Inc. ("Flynn Appraisal") to perform

**5.** Flynn Appraisal Associates, Inc. and Brian Flynn (the individual appraiser) shall be re-

ferred to collectively as the "Flynn Defendants."

an appraisal of the Coliseum. (*Id.* ¶ 54–55.) According to Defendants, Flynn Appraisal valued the Coliseum at over $9,000,000 but failed to conduct such basic due diligence as investigating the validity of the faked and forged leases or obtaining estoppel certificates for the current tenants.[6] (*Id.* ¶ 56, 59–60.) Sunset Financial then engaged Boney & Johnson Appraisers ("Boney & Johnson") to provide an independent validation of Flynn Appraisal's appraisal. (*Id.* ¶ 63.) Boney & Johnson expressed concerns about the validity of the earlier appraisal but, according to Defendants, Phillips, Forman, Benish, and representatives from Sunset Financial induced Boney & Johnson to sign off on the earlier appraisal by misrepresenting to them that the Phillies' lease had been executed. (*Id.*)

### D. *The Events of August 4, 2004— The Purported Closing Date*

On August 4, 2004, the loan transaction was purportedly consummated without either Staley or a representative from Redevelopment present.[7] (*Id.* ¶ 66–67.) According to Defendants, Phillips, Forman, and/or Benish forged Staley's signature on the loan documents at the closing. (*Id.* ¶ 67, FAC ¶ 27.) Benish then allegedly convinced two notaries public employed at Surety Title Company that Staley's signature on the loan documents was authentic, and that they should notarize the documents. (FAA ¶ 69, FAC ¶ 27–32.) The notaries public notarized the documents, according to Defendants, despite the fact that Staley neither appeared before the notaries or acknowledged her signature on the documents. (FAA ¶ 69.)

There were a number of unusual characteristics about the purported closing. For example, although the contract of sale listed the Coliseum's purchase price as $8,200,000, Sunset Commercial or Plaintiff only made a loan in the amount of $4,700,000. (*Id.* ¶ 70–71; FAC ¶ 6.) The true purchase price was listed on the closing settlement sheet as $3,558,214.00 and the amount of $4,641,786 of the purchase price was listed as paid as a "gift of equity." [8] (FAA ¶ 72.) The remaining amount of the loan paid for all real estate taxes in arrears, professional fees, and closing costs (including $50,531.79 paid to Redevelopment at closing).[9] Thus, the actual "loan-to-value" ratio was 132%—far greater than the 65% or less as represented by the letter of intent sent by Forman. (*Id.* ¶ 73–75.) Second, the settlement sheet showed that of the $130,000 Staley provided to Phillips to serve as the down payment, only $50,000 was actually used for the down payment. (*Id.* ¶ 76.) Third, the

---

6. An estoppel certificate is a signed statement by a party, such as a tenant, certifying for the benefit of another party that a certain statement of facts is correct—such as that a lease exists, that there are no defaults or that rent is paid on a certain dated. *Blacks Law Dictionary* 551 (6th ed.1990). The delivery of the statement by the tenant prevents the tenant from later claiming a different state of facts. *Id.*

7. According to Defendants, in the summer of 2004, Staley was in New York with the United States Olympic Basketball Team, preparing to travel to Greece in September for the 2004 Olympics. (FAA ¶ 65.)

8. A "gift in equity" generally means a sale price below market value, where the difference is a gift from the seller to the buyer. Such gifts are usually between family members.

9. Plaintiff claims that it was induced into making the loan upon its belief that certain leases for the Property had been executed and were in effect. As such, the $8,200,000 purchase price reflected the value of the property plus the income generated from such leases. s(FAC ¶ 39.)

settlement sheet showed that $50,000 was paid to Redevelopment at closing but, according to Defendants, Phillips, Forman, and Benish, acting in concert, forged Staley's signature on the check to Redevelopment (FAA ¶ 76, 88–89) endorsing it over to a fictitious entity known as FBS, Inc. Defendants allege that FBS, Inc. was an entity formed to divert closing proceeds to Phillips, Forman, and/or Benish. (*Id.* ¶ 89.)

No deed was provided and the transaction was not funded at the closing. Instead, Staley's signature was allegedly forged on an affidavit of consideration and the affidavit was notarized by a third notary public from Surety Title. (*Id.* ¶ 79–80.) In addition, subsequent to the closing but before the transaction was funded, Henry Doner ("Doner") of the law firm Castro & Doner, P.C. delivered an opinion letter on behalf of Defendants containing a number of misstatements of material fact including a verification that the loan documents were legitimate and signatures on the documents were valid. (*Id.* ¶ 85–86, FAC ¶ 34.) Defendants allege that Doner was retained by Benish and delivered the opinion without ever talking with Staley. (*Id.*) Instead, Defendants allege that Doner relied exclusively on Benish's representations regarding the loan documents. (*Id.*)

Sometime after the closing (on either August 31, 2004 according to Plaintiff or October 29, 2004 according to Defendants), Sunset Commercial assigned all of its rights and interest in the mortgage note to Plaintiff. (FAC ¶ 14, FAA ¶ 81.) After the closing, Plaintiff claims that Defen-

dants failed to make any payments under the loan and Defendants ultimately defaulted. (FAC ¶ 18–19.)[10] As a result, Plaintiff accelerated all amounts owed under the note and demanded payment from Defendants. (FAC ¶ 18–19.)

## II. PROCEDURAL HISTORY

Plaintiff filed companion actions in this case on April 8, 2005 in the Superior Court of New Jersey: (1) a complaint in foreclosure against Redevelopment alleging that Redevelopment had defaulted on its loan obligations surrounding its purchase of the Coliseum (the "Foreclosure Action"); and (2) an action against both Redevelopment and Staley (as guarantor of the note) demanding payment of the overdue principle, interest, and late fees under the loan (the "Note Action"). On June 6, 2005, both state court actions were removed to this Court.[11]

On July 17, 2005, Defendants filed an Answer in the Note Action making a number of counterclaims and third-party claims against various third-party defendants. Third-party defendants Sunset Mortgage/Sunset Commercial and Flynn Appraisals filed motions to dismiss Defendants' third-party complaint on August 25 and September 8, 2005, respectively.

In response to the deadlines set in a December 21, 2005 scheduling order entered by U.S. Magistrate Judge Ann Marie Donio, on January 10, 2006 Plaintiff filed a motion to amend/correct Plaintiff's Complaint in order to add new parties and new claims (contained in Plaintiff's proposed

---

**10.** At some point, it became clear to Plaintiff that the Coliseum was generating essentially no rental income and a number of the tenants filed lawsuits against Sunset Financial. As a result, with the approval of the state court, Plaintiff appointed a receiver for the property. According to Plaintiff's receiver, the property was desperately in need of significant and

expensive repairs. In response to the rapid deterioration of the property, on December 2, 2005, this Court issued a consent order authorizing the sale of the property *pendente lite.*

**11.** The Foreclosure Action is Docket No. 05–2914 and the Note Action is 05–2915.

First Amended Complaint ("FAC")).[12] On January 20, 2006, Defendants filed a cross-motion to amend its answer, cross-claims and counterclaims (contained in Defendants' First Amended Answer, Cross-claims, and Counterclaims ("FAA")). Both the Sunset Defendants and Flynn Defendants filed opposition to Plaintiff's motion for leave to amend on January 19 and January 27, 2006, respectively. In addition, the Sunset Defendants and Flynn Defendants filed opposition to Defendants' cross-motion to amend on February 3 and January 27, 2006 respectively. Plaintiff and Defendants each timely replied on February 10, 2006. The Court heard oral argument on February 15, 2006 and reserved decision on all four pending motions.

## III. PLAINTIFF'S MOTION AND DEFENDANTS' CROSS–MOTION FOR LEAVE TO AMEND

Plaintiff has moved for leave to amend/correct its Complaint and Defendants cross-moved to amend its answer, cross-claims and counterclaims.

### A. Legal Standard for Motions for Leave to Amend

■ Under Fed.R.Civ.P. 15(a), a party may amend "the party's pleading once as a matter of course at any time before a responsive pleading is served." Fed. R.Civ.P. 15(a). If a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party." Id. Leave to file an amended complaint "shall be freely given when justice so requires." Id.; see Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(a motion for leave to amend under Rule 15(a) should be freely granted); Adams v. Gould, Inc., 739 F.2d 858, 864 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).[13]

### B. Application to Plaintiff's Motion for Leave to Amend and Defendants' Cross–Motion to Amend

#### 1. Plaintiff's Motion for Leave to Amend

This Court will grant Plaintiff's motion to amend its Complaint (in favor of its proposed FAC) because Plaintiff can amend its Complaint as a matter of right under Fed.R.Civ.P. 15(a). Here, Defendants are the only party that served Plaintiff with a responsive pleading as Defendants answered Plaintiff's Complaint on July 6, 2005 (Docket Item No. 4 in the Foreclosure Action and Docket Item No. 5 in the Note Action.) Because Defendants filed a responsive pleading, Plaintiff would normally be required to seek leave of court to amend, but in this case, Defendants consented (in writing) to Plaintiff's amendment. See Fed.R.Civ.P. 15(a); (Def.'s Br. at 12.) With respect to third-party defen-

---

**12.** Complicating the procedural history in this matter is the fact that Sunset Financial previously filed a motion for leave to amend on August 17, 2005. Sunset Financial withdrew the motion on February 2, 2006 after filing a new motion for leave to amend.

**13.** Although liberally granted, the decision to grant leave to amend a complaint rests within the sound discretion of the trial court under Fed.R.Civ.P. 15(a), see Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983), but a liberal amendment philosophy under the Federal Rules of Civil Procedure limits the district court's discretion to deny leave to amend. See Adams, 739 F.2d at 864. Thus, the district court may only deny leave to amend (a) if the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party or (b) if the amendment would be futile (i.e., the amendment fails to state a cause of action). See id.; see also Massarsky, 706 F.2d at 125.

dants, the Flynn Defendants, and the Sunset Defendants, this Court finds that, because they have not yet filed responsive pleadings to Plaintiff's Complaint, Plaintiff can amend the Complaint as to these third-party defendants as a matter of right. Indeed, this Court notes that the Flynn Defendants and Sunset Defendants were not named as defendants by Plaintiff in its original Complaint. Thus, Plaintiff will be permitted to file its proposed FAC.

### 2. Defendants' Cross–Motion to Amend

This Court will also grant Defendants' cross-motion to amend its answer, cross-claims and counter-claims. Just as Defendants were the only party that filed a responsive pleading to Plaintiff's Complaint, here, Plaintiff is the only party that filed a responsive pleading to Defendants' cross-claims and counterclaims as Plaintiff answered Defendants' counterclaims on August 10, 2005 (Docket Item No. 9 in the Foreclosure Action and Docket Item No. 10 in the Note Action). Similar to Defendants, Plaintiff has also consented to Defendants amending its pleading. Thus, Defendants have the right to amend their answer, cross-claims, and counterclaims as a matter of course under Fed.R.Civ.P. 15(a) and, as to counterclaims against Plaintiff, will be permitted to file its proposed FAA.

In contrast to the position taken by the Flynn Defendants—namely that their filing of a motion to dismiss was "tantamount to a responsive pleading"—a motion to dismiss is not a responsive pleading under Rule 15(a). *See Shane v.*

*Fauver,* 213 F.3d 113, 115 (3d Cir.2000); *Centifanti v. Nix,* 865 F.2d 1422, 1431 n. 9 (3d Cir.1989)("[N]either a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Fed.R.Civ.P. 15(a)."); *Kelly v. Delaware River Joint Comm'n,* 187 F.2d 93, 94 (3d Cir.1951). Because the Flynn Defendants and the Sunset Defendants only filed motions to dismiss and not responsive pleadings, Defendants may amend their cross-claims against both Flynn Defendants and Sunset Defendants as a matter of course. Defendants may take such action by filing its proposed FAA.[14]

## IV. THIRD–PARTY DEFENDANTS' MOTIONS TO DISMISS

Defendants answered Plaintiff's original Complaint on August 10, 2005. The answer contained a Third-party Complaint bringing cross-claims of fraud (including claims under the New Jersey Racketeer Influenced and Corrupt Organization Act ("NJRICO") and New Jersey Consumer Fraud Act ("NJCFA")), fraud in the inducement, negligence/malpractice, negligent misrepresentation, conspiracy, aiding and abetting, conversion and breach of covenant against both the Flynn Defendants and/or Sunset Defendants. Both the Sunset Defendants and Flynn Defendants moved to dismiss the Third-party Complaint on August 25, 2005 and September 8, 2005 respectively. While these motions were pending, Defendants filed a cross-motion for leave to amend its answer, cross-claims and counterclaims on January 20, 2006.

---

**14.** The Court need not address arguments made by the Flynn Defendants and Sunset Defendants that leave to amend should be denied because allowing either Plaintiff's motion to amend or Defendants' cross-motion to amend would be futile. As another court in this District recently held, absent the filing of a responsive pleading, Rule 15(a) "permits amendment as of right, *without regard to potential prejudice, delay or futility of amendment.*" *Tomlinson v. Virtua–West Jersey Health Sys.,* 2005 WL 1529411, *7 (D.N.J., June 28, 2005)(emphasis added) *citing Centifanti,* 865 F.2d at 1431.

In their motions to dismiss, the third-party defendants raise three arguments. First, they argue that Defendants have not pled their fraud-related claims (including claims under the NJRICO and NJCFA) with particularity as required by Fed.R.Civ.P. 9(b). Second, the third-party defendants argue that Defendants' negligence-related claims are improperly plead and fail to satisfy even the more liberal pleading requirements set out in Rule 8(a). Finally, third-party defendants argue that Defendants' claims of conversion and breach of contract must be dismissed under Fed.R.Civ.P. 12(b)(6) because they fail to state a claim upon which relief can be granted. In light of the fact that this Court must accept all of the allegations made in Defendants' Third-party Complaint as true, this Court finds these arguments unpersuasive and will allow all claims made by Defendants against third-party defendants to proceed.[15]

## A. *Legal Standard for a Motion to Dismiss*

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A district court must accept any and all reasonable inferences derived from those facts. *See Unger v. Nat'l Residents Matching Program,* 928 F.2d 1392, 1394–95 (3rd Cir. 1991); *Glenside West Corp. v. Exxon Co., U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J. 1991); *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (D.N.J.1990). Further, the court must view all allegations in the Complaint in the light most favorable to the plaintiff. *See Scheuer,* 416 U.S. at 236,

---

**15.** Before addressing the merits of the third-party defendants' motions to dismiss, the Court must address a preliminary matter. In their brief in support of their cross-motion to amend, Defendants argue that amendment of the third-party complaint moots the early motions to dismiss filed by both the Sunset Defendants and the Flynn Defendants. *See Snyder v. Pascack,* 303 F.3d 271, 276 (3d Cir. 2002)("an amended pleading supercedes all prior pleadings and the prior pleadings have no further role in the case."); *see also Jordan v. City of Philadelphia,* 66 F.Supp.2d 638, 641, n. 1 (E.D.Pa.1999)(a motion directed at a prior pleading should be considered directed at the new pleading only where the defects in the original pleading remain in the new pleading.)

"Once an amended pleading is interposed, the original pleading no longer performs any function in the case and any subsequent motion made by an opposing party should be directed at the amended pleading." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2005). However, a defendant "should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was

pending." *Id.* Rather, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Id. citing Jordan,* 66 F.Supp.2d at 641, n. 1.; *Sun Co. v. Badger Design & Constructors, Inc.,* 939 F.Supp. 365, 367 n. 3 (E.D.Pa.1996).

This Court finds that, while Defendants' original third-party complaint will play no further role in this litigation, Defendants' cross-motion to amend does not moot the Sunset Defendants and Flynn Defendants' prior motions to dismiss. Instead, following the holding in *Johnson* and *Sun Co.,* the Court will address arguments made in the Sunset Defendants and Flynn Defendants' motions to dismiss as if they were directed at the Defendants' FAA to the extent applicable. Further, as directed by the Court at oral argument, the Sunset Defendants and the Flynn Defendants will have the opportunity to file motions to dismiss any new claim raised in Plaintiffs' FAC and Defendants' FAA. However, in their subsequent motions to dismiss, the Sunset Defendants and Flynn Defendants are precluded from raising any argument addressed in this Opinion.

94 S.Ct. 1683; *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). Finally, in deciding a motion to dismiss, a court should look to the face of the complaint and decide whether, taking all of the allegations of fact as true and construing them in a light most favorable to the nonmovant, plaintiff's allegations state a legal claim. *Markowitz,* 906 F.2d at 103.

### B. *Defendants' Fraud-based Claims*

In its proposed FAA, Defendants assert, among others, claims of fraud, conspiracy, aiding and abetting, and violations of NJCFA and NJRICO. (*See* FAA Counts 1–3, 8 and 9.) In their motion to dismiss, the Sunset Defendants first argue that, Defendants have failed to plead the averments of fraud with sufficient particularity. The crux of their contention is that, in Defendants' original Third-party Complaint (and now proposed FAA), Defendants have failed to specify when or where alleged misrepresentations and fraudulent acts occurred or to identify which of the third-party defendants either made misrepresentation or engaged in the specific fraudulent conduct. (*Id.* at 8–9.) The Sunset Commercial Defendants point to numerous examples where the proposed FAA refers to multiple third-party defendants collectively.[16] (*Id.* 9.) Moreover, according to the Sunset Defendants, all of

Defendants' pleadings that were made upon Defendants' "information and belief" fail to meet the particularity requirement of Fed.R.Civ.P. 9(b). (*Id.*). (*Id.* at 8.) Finally, according to the Sunset Defendants, claims made under NJCFA and NJRICO must also be pled with sufficient particularity under Rule 9(b) to survive a motion to dismiss.

### 1. Pleading Standards Under Fed. R.Civ.P. 9(b)

When pleading an allegation of fraud, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A plaintiff is not required to "plead the 'date, place or time' of the fraud, so long as plaintiff uses an alternative means of injecting precision and some measure of substantiation into their allegations." *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir.1998) (quoting *Seville Indus. Machinery v. Southmost Machinery,* 742 F.2d 786, 791 (3d Cir.1984)). In order to meet this standard, the subject and nature of each misrepresentation must be adequately pled. *See Seville Indus. Machinery,* 742 F.2d at 791.[17]

When the alleged fraud involves both numerous defendants and misrepresentations of fact, Rule 9(b) is satisfied if

---

**16.** The Sunset Defendants provide these examples in its brief in opposition to Defendants cross-motion to amend. Such examples included allegations made in Defendants' proposed FAA in which Defendants state that Phillips *and* Forman advised Staley that she might have to provide a guaranty for the bridge loan but that the guaranty would be terminated when the permanent financing was in place; that Phillip, Benish, Forman *and* Holiday prepared bogus lease transactions with the Phillies; and that Phillips, *working in concert with* Forman and Benish, told Staley that the appraised value of the Coliseum was in excess of $9,000,000.

**17.** In *Seville,* the Third Circuit held that plaintiffs satisfied Rule 9(b) by incorporating into plaintiff's complaint a specific list of machine parts involved in the fraud, as well as described the transactions that involved these parts. *See id.* The court concluded that the heightened pleading requirement was met because the complaint "sets forth [i] the nature of the alleged misrepresentations, and [ii] while it does not describe the precise word used, each allegation of fraud adequately describes the nature and subject of the alleged misrepresentation." *Id.*

"at a minimum ... the plaintiff identif[ies] the speaker of the allegedly fraudulent statements." *Klein v. General Nutrition Cos., Inc.*, 186 F.3d 338, 345 (3d Cir.1999); *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F.Supp.2d 494, 511 (D.N.J.1999)("A plaintiff must plead fraud with particularity with respect to each defendant, thereby informing each defendant of the nature of its alleged participation in the fraud.").

■ A court must apply the heightened pleading standards of Rule 9(b) in accordance with the rule's underlying purpose—namely that the defendant (a) be put on notice of the precise misconduct surrounding the allegation of fraud asserted against him and (b) guarded against "spurious charges of immoral or fraudulent behavior." *See Seville Indus. Machinery*, 742 F.2d at 791; *see also Lum v. Bank of America*, 361 F.3d 217 (3d Cir.2004); *New Jersey Sports Prod., Inc. v. Don King Prod., Inc.*, 1997 U.S. Dist. LEXIS 23209 at *42 (D.N.J. October 28, 1997)(district court held that "[t]he *central inquiry* ... is whether the complaint is sufficiently precise to place the defendant on notice . . . .")(emphasis added).

### 2. Whether Defendants' Allegations of Fraud are Properly Pled

■ The Sunset Defendants argue that Defendants have not pled their claims of fraud with particularity as they have not pled "the who, what, when, where and how" of the fraudulent acts and misrepresentations of fact alleged against the Sunset Defendants. (Sunset Defendants' Br. in Support of Mot. to Dismiss at 6 *citing MCI Worldcom Network Servs., Inc. v. Graphnet, Inc.*, 2005 WL 1116163, at *14 (D.N.J., May 11, 2005)). However, Defendants do not need to plead the "date, place or time" of each alleged misrepresentation or each alleged fraudulent act performed to satisfy the requirements under Rule 9(b). Indeed, "focusing exclusively on Rule 9(b)'s 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated' by the Federal Rules of Civil Procedure." *Christidis v. First Penn. Mtg. Trust*, 717 F.2d 96, 100 (3d Cir.1983)(*quoting* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1298, at 407 (1969)). Rather, Rule 9(b) merely requires that "circumstances" of the alleged fraud be pled with enough specificity to "place defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp.*, 742 F.2d at 791. While allegations of "date, place and time" fulfill these requirements, Rule 9(b) does not require them. *See id.* Rather, a plaintiffs can satisfy Rule 9(b) by "us[ing] alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

■ In their proposed FAA, Defendants provide the required precision and measure of substantiation into their allegations of fraud. In their moving papers and at oral argument, Defendants have provided the Court with numerous examples of specific allegations of fraud with regard to the Sunset Defendants. For example:

● In a letter of intent dated July 13, 2004, Forman (on behalf of Sunset Financial and Sunset Commercial) sent a letter of intent to Defendants that contained misrepresentations of the loan-to-value ratio, the fact that the financing was only a bridge loan and that the loan would be an interest only loan (FAA ¶ 52);

● In the Spring of 2004, Forman misrepresented to Defendants that Forman had arranged financing to "take-out" Defendants' bridge loan and that such financing was a "done deal" (*Id.* ¶ 34, 36);

- Phillips and Forman advised Defendants that Staley's personal guaranty would be terminated within 30 to 90 days when the permanent financing was in place (*Id.* ¶ 35);
- Phillips, Benish, and Forman fabricated non-existent leases (including a faked lease with New York Life Insurance Company) for space in the Coliseum (*Id.* ¶ 42–43, 46.); and
- Phillips, Forman, and Benish provided bogus lease information to Flynn Appraisals. (*Id.* ¶ 55.) [18]

Moreover, the Court holds that while some, but not all, of the fraud allegations reference multiple defendants, this does not mean that Staley and Redevelopment have not sufficiently pled fraud, as it is certainly possible that multiple defendants could make the same misrepresentation.[19]

Finally, the Court addresses arguments by the Sunset Defendants that Defendants claim under NJRICO must also be dismissed because Defendants are required to satisfy the same heightened pleading requirements of Fed R. Civ. P. 9(b) when pleading their NJRICO claim. Defendants first note that there is no dispute that Defendants properly pled the elements of a New Jersey Civil RICO claim under N.J.S.A. 2C:41–4. (Proposed FAA ¶¶ 111–18.) Instead, the dispute centers on (i) whether Defendants' NJRICO claim must satisfy the heightened pleading requirement of Rule 9(b) and, if such a require-

ment exists, (ii) whether Defendants have satisfied such a burden.

Defendants argue that, unlike the federal RICO statute, the NJRICO does not require a plaintiff to plead its claim with the particularity required by Rule 9(b). However, having already held that Defendants' fraud-related claims have satisfied the heightened pleading requirements of Rule 9(b), the Court need not address whether a claim under NJRICO must satisfy the heightened pleading requirements. Even if NJRICO claims are subject to this heightened standard, as discussed, *supra,* Defendants have met the standard (e.g., by specifically alleging acts of fraud, alleging that Forman forged Staley's signature on loan closing documents and a check payable to Redevelopment, alleging that Forman played a role in obtaining an inflated appraisal, and specifically alleging that Forman played a role in converting Defendants funds at the purported closing). (FAA ¶ 67, 89 and 114.)

### 3. Whether Defendants have Sufficiently Plead Fraud Allegations Made "Upon Information and Belief"

At oral argument, counsel for the Sunset Defendants argued that Defendants' fraud claims made "upon information and belief" do not satisfy the heightened pleading requirement of Rule 9(b).[20] In support of

**18.** This Court agrees with Defendants argument that, where specific allegations involve Forman, Sunset Commercial and Sunset Mortgage may be liable for his torts under New Jersey's respondeat superior laws if he was acting in his official capacity when doing acts contained in the allegations. *See Hill v. New Jersey Dep't of Corrections Comm'n Fauver,* 342 N.J.Super. 273, 305, 776 A.2d 828 (2001).

**19.** In *Shulton, Inc. v. Optel Corp.,* this District held that, "[t]he fact that plaintiff has not

differentiated among defendants in some instances does not warrant dismissal of the pleading where plaintiff alleges that all of the defendants ... acted to facilitate a general scheme." 1986 WL 15617, *16 (D.N.J. September 29, 1986).

**20.** As a preliminary matter, the Court notes that Defendants' proposed FAA is not replete with fraud allegations made solely upon Defendants' information and belief. In fact, aside from allegations regarding the status and domicile of certain third-party defen-

this argument, the Sunset Defendants cite two cases, the Seventh Circuit Court of Appeals' decision in *Bankers Trust Co., v. Old Republic Ins. Co.* and this District's decision in *Shulton Inc. v. Optel Corporation.*[21]

■ The Court disagrees with the legal conclusions of the Sunset Defendants. Although neither case cited by the Sunset Defendants is binding on this Court, both are factually distinguishable from the present case. In holding that the court could not accept fraud allegations made "upon information and belief," the *Shulton* court highlighted that plaintiff did not include "any elaboration as to the basis of [their] belief." *Shulton*, 1986 WL 15617 at *16. Unlike the plaintiff in *Shulton* and *Bankers Trust Co.*, in their proposed FAA, Defendants have fully elaborated on the basis

of their belief regarding the existence of phony leases (see FAA 44, 49), Forman's role in converting the closing proceeds through FBS, Inc. (FAA ¶ 89) and the third-party defendants agreement and common design intended to defraud Defendants.[22] (FAA ¶ 159, 163.)

■ Moreover, the Court's obligations to read the Federal Rules of Civil Procedure together as a cohesive unit, suggests to this Court that a blanket prohibition on pleading fraud claims "upon information and belief" is inappropriate. The heightened pleading requirement under Rule 9(b) is intended to "safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indust. Mach.*, 742 F.2d at 791. At the same time, however, the rule must be read in concert

dants, the Court finds only six instances (in a 166 paragraph third-party complaint) in which Defendants have plead fraud allegations "upon information and belief." (*See* FAA ¶¶ 44, 49, 80, 89, 159 and 163.) Two of the averments involve whether certain leases for space at the Coliseum were fake. (*See* FAA ¶¶ 44, 49.) A third did not involve the Sunset Defendants at all, and instead involved allegations that Phillips and/or Benish convinced a notary public from Surety Title Company to notarize an affidavit of consideration. (FAA ¶ 80.) Another averment involves the existence and purpose for FBS, Inc., an entity that was allegedly used by the third-party defendants to convert funds dispersed at the closing. (FAA ¶ 89.) The remaining two averments involve allegations that the third-party defendants entered into an agreement (*see* FAA ¶ 159) or pursued a common design (*see* FAA ¶ 163) to defraud Defendants.

21. In *Bankers Trust Co., v. Old Republic Ins. Co.*, the Seventh Circuit held that a plaintiff's "duty to plead the circumstances constituting fraud with particularity could not be fulfilled by pleading those circumstances on 'information and belief' unless they were facts inaccessible to the plaintiff...." 959 F.2d 677, 683 (7th Cir.1992); *but see Shapiro v. UJB Fin. Corp.*, 964 F.2d 272 (3d Cir.1992) (citing 2A James W. Moore & Jo D. Lucas, *Moore's Federal Practice* ¶ 9.03) (1991)("where the

facts are in the exclusive possession of the adversary, courts should permit the pleader to allege the facts on information and belief...."). In *Shulton Inc. v. Optel Corp.*, a court in this District held that "the court cannot accept such serious allegations of fraud based solely on the 'information and belief' of the plaintiff alone *without any elaboration as to the basis of that belief.*" 1986 WL 15617 at *16 (D.N.J.1986)(emphasis added) (*citing 2 Moore's Federal Practice*, ¶ 9.03.).

22. Specifically, with respect to elaboration regarding the presence of phony leases, Defendants provided facts regarding the existence of a phony lease with the Phillies (FAA ¶ 38–41) and with New York Life Insurance Co. (FAA ¶ 43.) Defendants also provided sufficient reasoning why the Sunset Defendants (along with other third-party defendants) would produce bogus leases for the Coliseum—namely, to secure the bridge financing and consummate the fraudulent transaction. (FAA ¶ 45.) With respect to the existence of an agreement between the third-party defendants or a common design to defraud Defendants, Defendants have provided numerous examples of acts the third-party defendants did together that the reason for performing such acts was to defraud Defendants.

with Fed.R.Civ.P. 8(a) (providing for the liberal construction of pleadings) and Fed. R.Civ.P. 11(b)(3) (requiring an attorney to certify that "to the best of the attorney's knowledge, information and belief" formed after reasonable inquiry, that "the allegations and other factual contentions [in a complaint] have evidentiary support. . . .").[23] *See New Jersey Sports Prod., Inc.,* 1997 U.S. Dist. LEXIS 23209 at *42 (the court is required to read Rule 8 and Rule 9(b) together); *Shulton, Inc.,* 1986 WL 15617 at *16. Thus, "focusing exclusively on [Rule 9(b)'s] 'particularity' language 'is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated'" by the Federal Rules of Civil Procedure. *Seville Indust. Mach.,* 742 F.2d at 791 *quoting Christidis v. First Penn. Mtg. Trust,* 717 F.2d 96, 100 (3d Cir.1983). The Court finds that, after reading Rules 8(a), 9(b) and 11(b) together and considering the various checks and balances each Rule places on the others, a blanket prohibition on pleading fraud allegations "upon information and belief" is not appropriate.

For the reasons stated in this Section III.B, the Court will deny the Sunset Defendants' motion to dismiss Counts 1–3, 8, and 9 of Defendants proposed FAA.

### C. *Defendants' Negligence-based Claims*

In its proposed FAA, Defendants bring claims of negligent misrepresentation (Count 4, FAA ¶¶ 119–126) and negligence/ malpractice (Count 5, FAA ¶¶ 127–141) against both the Sunset and Flynn Defendants. Specifically, Defendants allege that both the Sunset and Flynn Defendants, along with other third-party defendants, (1) relied on numerous misrepresentations of fact made by both the Sunset and Flynn Defendants (involving due diligence, investigation of the validity of leases and "take out" financing, among other things), and (2) provided Defendants with a faulty appraisal and failed to conduct basic due diligence and exercise a duty to use knowledge, skill and ability possessed by such professionals. (*See* FAA ¶¶ 119–141.)

### 1. Arguments Made by Both the Sunset and Flynn Defendants

Both the Sunset and Flynn Defendants move to dismiss Counts 4 and 5 of the FAA (Counts 2 and 3 of the original Third-party Complaint), arguing that Defendants' negligence and negligent inducement claims do not satisfy even the more liberal pleading requirements of Fed. R.Civ.P. 8(a). According to the Sunset and Flynn Defendants, Rule 8(a) requires that a pleading provide a defendant with fair notice of the basis of a claim against him. *See* Fed.R.Civ.P. 8(a). Here, by charging all third-party defendants collectively with acting negligently, Defendants have failed to put any individual defendant on notice of the basis of the negligence claim asserted against him or her.

To illustrate the point that Defendants' sweeping claims fail under Rule 8(a), the Sunset Defendants point to Paragraph 124 of the proposed FAA that alleges negligence on the part of all of the third-party defendants failing to perform due diligence or obtaining estoppel certificates. Sunset Defendants state that Defendants have failed to identify why all of the third-party defendants would be responsible for conducting due diligence or obtaining estoppel certificates (given the fact that the Sunset Defendants are mortgage brokers and

---

**23.** In so certifying under Rule 11, Defendants and their counsel are subjecting themselves to possible sanctions if such allegations are proved to lack any reasonable basis. Fed. R.Civ.P. 11.

have no legal duty to advise Staley with regard to her business decisions).

### 2. Additional Arguments Made by the Flynn Defendants

The Flynn Defendants put forth two additional arguments with respect to Defendants' claim of negligent misrepresentation. First, the Flynn Defendants argue that Defendants cannot maintain a claim of fraudulent misrepresentation because they cannot prove that they relied upon the appraisal Flynn Appraisal prepared in connection with the transaction. According to the Flynn Defendants, a party can prevail on a claim on negligent misrepresentation only if it can demonstrate that (1) defendant negligently made false communications of material fact, (2) plaintiff justifiably relied upon the misrepresentations, and (3) such reliance resulted in ascertainable loss. *See Szczubelek v. Cendant Mortgage Corp.,* 215 F.R.D. 107 (D.N.J. 2003). Such a claim is unsustainable by Defendants, according to the Flynn Defendants, because Staley claims she never signed any of the closing documents and, if she never signed the documents, she could not have relied upon the Flynn appraisal in doing so. The Flynn Defendants also point out that there are no allegations in the proposed FAA that Staley ever reviewed the appraisal before she gave down payment money to Phillips and that it is entirely possible that Staley transferred money to Phillips prior to the date the appraisal was issued (June 28, 2004) making reliance on the appraisal impossible.

Second, the Flynn Defendants argue that, because the appraisal contained a disclaimer that the valuation was based on the Phillies signing a lease at the Coliseum, Flynn is absolved of liability stemming from a faulty valuation. The Flynn Defendants cite *Zielinski v. Professional Appraisal Assoc.,* 326 N.J.Super. 219, 225–27, 740 A.2d 1131 (1999)(where an appraiser disclaims responsibility for investigating an aspect of the property, the appraiser cannot be held liable for any defects in areas where it has disclaimed responsibility):[24] Flynn argues that *Zielinski* applies here as Defendants never saw the report and Flynn disclaimed issues relating to the Phillies lease, an extremely important component of the overall valuation.

### 3. The Court's Analysis

Under Fed.R.Civ.P. 8(a), a plaintiff is required only to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). Thus, the complaint need only "provide a statement sufficient to put the opposing party on notice of the claim." *See Weston v. Pennsylvania,* 251 F.3d 420, 428 (3d Cir.2001). In the context of a negligence claim, a bare allegation of negligence is sufficient. *See Sierocinski v. E.I. du Pont De Nemours & Co.,* 103 F.2d 843, 843–44 (3d Cir.1939)(a general allegation of negligence such as "defendant negligently drove a motor vehicle against plaintiff who was then crossing said highway" is sufficient.)

 Defendants' pleadings go well beyond the minimal standard of Rule 8(a). Rather than simply making a bare allegation of negligence—all that is required under *Sierocinski*—Defendants have identified specific acts of negligence (e.g., Flynn Appraisals' failure to conduct due dili-

---

24. In *Zielinski,* an appraiser expressly disclaimed any responsibility for investigating structural or engineering problems. *See* 326 N.J.Super. at 223, 740 A.2d 1131. When a buyer, who had never seen the appraisal, sued because of substantial structural defects, the court concluded that the appraiser could not be held liable for structural defects when it had disclaimed responsibility for them. *See id.* at 225–27, 740 A.2d 1131.

gence, obtain estoppel certifications, and investigate the validity of leases and the existence of tenants, and the Sunset Defendants' acceptance of forged and faked documents, among other things) and specific negligent misrepresentations (e.g., the Sunset Defendants' statement of the loan-to-value ratio expressed and the existence of "take-out" financing in a letter of intent, among others.) Providing such detail more than satisfies the liberal pleading requirements of Rule 8(a). Further, Defendants' pleadings are sufficient to put both the Flynn and Sunset Defendants on notice of the claims being asserted against them—even though the pleadings charge more than one of the third-party defendants collectively with acting negligently. It is certainly plausible that both parties acted negligently in performing their duties or made the same or similar negligent misrepresentations.

Moreover, the Court is unpersuaded by the two additional arguments advanced by Flynn Defendants. The argument that Defendants did not rely on Flynn's appraisal is of no moment as Defendants *expressly alleged* that they relied on the appraisal when making the decision to provide Phillips with funds to purchase the Coliseum. (FAA ¶ 57, 64, and 126.) It is well-settled that, in deciding a motion to dismiss, a court must "accept all well-pleaded allegations in the complaint as true,...." *Carino v. Stefan*, 376 F.3d 156, 159 (3d Cir.2004). For the purposes of deciding these motions to dismiss, this Court must conclude that, as alleged, Defendants relied upon the Flynn appraisal in deciding to fund the purchase. Furthermore, the Flynn Defendants' argument that Defendants could not have relied on the appraisal because the closing documents were forged makes little sense. Defendants allege that they relied on the appraisal in deciding to provide funds to Phillips (in the amount of $130,000) for the purchase—not in deciding whether to go through with the closing. (*See* FAA ¶ 64.)

■ Finally, the fact that the appraisal contained a disclaimer about the Phillies' lease—and the fact that the Phillies' lease did not exist—does nothing to absolve the Flynn Defendants of liability under a negligence theory. The appraisal failed to mention the numerous other phony leases allegedly faked or forged by other third-party defendants. (*See* FAA ¶ 61–62.) Even if Defendants had read the appraisal, a warning to Defendants that, in arriving at the valuation Flynn Appraisals made assumptions about one particular lease, simply cannot serve to inoculate the Flynn Defendants from liability for Defendants' reliance on the remainder of the appraisal. If an appraiser could avoid liability with such a disclaimer, no party could rely on any appraisal that contained even a minor disclaimer.

As such, both Defendants' claims of negligent misrepresentation (Count 4) and negligence/professional malpractice (Count 5) will be allowed to go forward.

### D. *Defendants' Claim of Conversion*

In Count 6 of the proposed FAA, Defendants allege that Phillips, Benish, and Forman, acting in concert, converted funds Staley had provided to Phillips for use as part of the down payment of the Coliseum. (FAA ¶ 144–153.) Specifically, Defendants allege that, following the closing, Defendant Redevelopment was issued a check in the amount of $50,000 out of the loan proceeds. (*Id.* ¶ 145.) Phillips, Benish, and Forman took the check, forged Staley's signature on it, and endorsed it over to FBS, Inc., an entity used to divert closing proceeds to them. (*Id.* ¶ 89, 145–46.) In their motion papers, the Sunset Defendants argue that this claim should be dismissed as Defendants have failed to

state a claim upon which relief can be granted because (1) in the original Third-party Complaint, Defendants failed to allege that any of the Sunset Defendants exercised dominion over the converted funds, and (2) that the generalized and unsupported assertions in the proposed FAA that Forman, along with Phillips and Benish, "assisted each other" in converting certain funds, do not cure the deficiencies present in the original Third-party Complaint.

Sustaining a claim of conversion requires a plaintiff to demonstrate, as a preliminary matter, that the defendant exercised dominion over funds that belong to plaintiff. *See Mueller v. Technical Devices Corp.*, 8 N.J. 201, 207, 84 A.2d 620 (1951). However, contrary to arguments made by the Sunset Defendants, Defendants specifically alleged that Forman (a) working with others, forged Staley's signature and endorsed a check at closing to FBS, Inc., and (b) used the entity FBS, Inc. to divert funds to himself or other third-party defendants. (*See* FAA ¶ 89, 145–146.) By virtue of participating in the forgery to deposit funds to an entity used to eventually divert the proceeds to himself and others, Forman exercised dominion over the funds. Moreover, the fact that Defendants' conversion claim implicates multiple defendants is not an adequate ground for dismissing the claim. Thus, under the standards of Fed.R.Civ.P. 12(b)(6), the Court will deny the Sunset Defendants' motion to dismiss Count 6 of Defendants proposed FAA.

### E. Defendants' Claim of Breach of the Covenant of Good Faith and Fair Dealing

In Count 7 of the proposed FAA, Defendants allege that the Sunset Defendants, along with other third-party defendants, breached the duty of good faith and fair dealing by engaging in fraud, making false representations upon which Defendants relied, forging Staley's signature, and converting deposit funds. (*See* FAA ¶ 154–157.) According to the Sunset Defendants, a plaintiff must prove bad faith in the *performance* or *enforcement* of a contract to state a *prima facie* claim of breach of the covenant of good faith and fair dealing. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assoc.*, 182 N.J. 210, 224, 864 A.2d 387 (2005)(emphasis added). Allegations of bad faith in bargaining or negotiations do not fall within the scope of the duty of good faith and fair dealing. *See In re Student Finance Corp. v. Royal Indemnity Co.*, 2004 WL 609329 at *6 (D.Del., March 23, 2004). The Sunset Defendants argue that, because Defendants' averments involve allegations of fraud in the inducement and execution—and not the performance or enforcement—of a contract, Defendants have failed to state a cognizable claim against the Sunset Defendants.

The Sunset Defendants do not dispute that an implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law and requires that neither party will interfere with the other's reasonable expectations under the contract. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 420, 690 A.2d 575 (1997); *Association Group Life, Inc. v. Catholic War Veterans of the United States*, 61 N.J. 150, 153, 293 A.2d 382 (1972). The question before this Court is whether the Sunset Defendants are bound by the covenant of good faith and fair dealing in their actions surrounding the letter of intent they sent to Defendants.

The Court is guided by two cases from this District, identified in Defendants' moving papers, that addressed similar issues. First, in *International Minerals and Mining Corp. v. Citicorp North*

*America, Inc.,* 736 F.Supp. 587, 591 (D.N.J.1990) (*"IMMC"*) defendant (a bank) sent plaintiff a "letter of proposal" outlining the proposed terms of a loan and certain conditions precedent that had to occur before funding could take place. Neither party argued that the letter proposal constituted a binding contract to provide funding. *See id.* at 594. Rather, plaintiff argued that the letter proposal triggered defendant's obligation to act in good faith and that defendant had breached this duty. *See id.* The district court held that, where a proposal letter "constitute[s] more than a unilateral request to fund a loan or to do business with a certain company" a duty to act in good faith arises. *Id.* at 594–95 (holding that, in this situation, the defendant is "bound to exercise its 'satisfaction' obligations set forth as conditions precedent to lending in a responsible manner.")

More recently, in *Dana Transport, Inc. v. Ableco Finance, LLC,* our sister court denied a defendant's motion to dismiss plaintiff's breach of the covenant claim alleging that defendant failed to act reasonably in determining whether conditions precedent requiring defendant to fund a loan were met where the parties set out the conditions in a proposal letter. *See* 2005 WL 2000152, *3, 2005 U.S. Dist. LEXIS 18086, *7–9 (D.N.J. August 17, 2005). Again, neither party argued that the proposal was a binding contract. *Id.* After recognizing that an implied covenant of good faith and fair dealing is present in all contracts in New Jersey, the district court held that, prior to discovery, the court is "unable to say . . . that there is no set of facts that plaintiff's could prove entitling it to recover damages that flow directly from defendant's alleged conduct." *Id.,* 2005 WL 2000152, *3, 2005 U.S. Dist. LEXIS 18086, at *7–8. As such, plaintiff's are entitled to proceed on the merits of a claim for breach of an implied covenant of good faith and fair dealing. *See id.,* 2005 WL 2000152, *3, 2005 U.S. Dist. LEXIS 18086, **8–9.

■ This Court will follow its sister courts and deny the Sunset Defendants' motion to dismiss as to Defendants' breach of covenant claim (Count 7 of the proposed FAA). It is clear from the holdings in *IMMC* and *Dana Transport, Inc.* that a letter proposal—while not a binding contract—subjects the parties to a duty of good faith and fair dealing. Here, the Sunset Defendants provided Defendants with a letter of intent which, like the letter proposals in *IMMC* and *Dana Transport, Inc.,* outlined the terms of the proposed loan. Defendants allege that the Sunset Defendants breached their duty to act in good faith by misrepresenting facts in the letter of intent and not acting reasonably in setting up the type of financing outlined in the letter of intent. (FAA ¶ 156.) Thus, like the Court in *Dana Transport, Inc.,* applying a 12(b)(6) standard, this Court is unable to say at this stage of the litigation that there is no set of facts that Defendants could prove entitling it to recover damages that flow directly from the Sunset Defendants' alleged conduct. As such, the Sunset Defendants' motion to dismiss Count 7 is denied.

## V. CONCLUSION

For the reasons expressed in Section III *supra,* the Court will grant both Plaintiff's motion for leave to amend and Defendants' cross-motion to amend and (a) Plaintiff will be permitted to file its proposed FAC, and (b) Defendants will be permitted to file its proposed FAA. In addition, for the reasons expressed in Section IV *supra,* the Court will deny, as to all counts in the proposed FAA, both the Sunset Defendants' and the Flynn Defendants' respective motions to dismiss.

The accompany Order is entered.

*ORDER*

THIS MATTER having come before the Court upon the following motions:

1. Plaintiff Sunset Financial Resources' motion for leave to amend its Complaint;

2. Defendants Redevelopment Group V, LLC and Dawn Staley's cross-motion to amend its answer, cross-claims and counterclaims;

3. Third-party defendant Flynn Appraisal Associates Inc.'s motion to dismiss the third-party complaint brought by Defendants; and

4. Third-party defendant Sunset Mortgage Company, LP and Sunset Commercial Group, LLC's motion to dismiss the third-party complaint brought by Defendants; and

the Court having considered the parties' numerous submissions in support of and in opposition thereto; and the Court having heard oral argument in this matter on February 15, 2006; and for the reasons expressed in the Opinion of today's date; and for good cause shown;

IT IS on this *24th* day of **February, 2006,** hereby

**ORDERED,** that plaintiff Sunset Financial Resources' motion for leave to amend its Complaint [Docket Item No. 44 for Civil Action No. 05–2914 and Docket Item No. 41 for Civil Action No. 05–2915] shall be, and hereby is, *GRANTED* and Plaintiff shall file and serve its proposed First Amended Complaint on all defendants within ten (10) days of this Order; and it is further

**ORDERED,** that defendants Redevelopment Group V, LLC and Dawn Staley's cross-motion to amend its answer, cross-claims, and counterclaims [Docket Item No. 47 for Civil Action No. 05–2914 and Docket Item No. 44 for Civil Action No. 05–2915] shall be, and hereby is, *GRANT-*

*ED* and Defendants shall file and serve their proposed First Amended Answer, Cross–Claims and Counterclaims on Plaintiff and all third-party defendants within ten (10) days of this Order; and it is further

**ORDERED,** that third-party defendant Flynn Appraisal Associates, Inc.'s motion to dismiss the third-party complaint brought by Defendants [Docket Item No. 24 for Civil Action No. 05–2914 and Docket Item No. 25 for Civil Action No. 05–2915] shall be, and hereby is, *DENIED;* and it is further

**ORDERED,** that third-party defendant Sunset Mortgage Company, LP and Sunset Commercial Group, LLC's motion to dismiss the third-party complaint brought by Defendants [Docket Item No. 17 for Civil Action No. 05–2914 and Docket Item No. 19 for Civil Action No. 05–2915] shall be, and hereby is, *DENIED.*